# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:06CV242-H

| | |
|---|---|
| CHERYL M. PHIFER,<br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | MEMORANDUM AND ORDER |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief Supporting ..." (document #11), both filed November 20, 2006; and Defendant's "Motion For Summary Judgment" (document #12) and "Memorandum in Support of the Commissioner's Decision" (document #13), both filed May 30, 2006. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On May 6, 2003, the Plaintiff filed an application for a period of disability, Social Security Disability Benefits ("DIB"), and Supplemental Security Income benefits ("SSI"), alleging she was

unable to work as of March 3, 2003 due to fibromyalgia. The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on October 7, 2005. On January 23, 2006, the ALJ issued a decision in which he found that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently (the requirements of "light work"); to sit, stand, and/or walk in combination for eight hours with a sit-stand option; to crouch, kneel, crawl, and climb stairs and ramps no more than occasionally; and never to climb ropes, ladders, or scaffolds; and that with this residual functional capacity, the Plaintiff could perform, among other things, her past relevant work as a printer.

The Plaintiff subsequently filed a timely Request for Review of Hearing Decision. On April 6, 2006, the Appeals Council denied the Plaintiff's request for review, making the initial hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on June 8, 2006, raising a single issue on appeal: whether the ALJ committed reversible error erred in concluding that Plaintiff was able "to sit, stand, and/or walk in combination for eight hours with a sit-stand option," rather than stating the maximum amount of time that the Plaintiff could perform each of those three functions in an eight-hour day. Notably, other than contending that the ALJ should have found that the Plaintiff could sit X hours, stand Y hours and walk Z hours each day, the Plaintiff does not contest the ALJ's determination of her residual functional capacity or ultimate conclusion that she was not disabled because she could perform her past relevant work as a printer. The parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

Relevant to the narrow issue raised on appeal, the Plaintiff testified that she was 53 years-old at the time of the hearing; that she had not graduated high school but had earned a GED; that she lived with her husband, adult daughter, and two-year-old grandson; that her past work experience included employment as a janitor, cloth folder, assembler and printer; that she became disabled on March 3, 2003 due to fibromyalgia; that she experienced muscle pain over her entire body; that medication did not control her pain, except that epidural injections had helped briefly; that she could lift 20 pounds occasionally and 10 pounds frequently, and could sit for 20 to 30 minutes at a time, but was unable to sustain work over an eight-hour workday even if allowed to alternately sit and stand; that crouching, crawling, kneeling, and stooping were difficult due to pain; and that she went grocery shopping but did not perform household chores.

A Vocational Expert ("VE") classified past work as medium (janitor and cloth folder) and light (assembler and printer).

The ALJ presented the VE with the following hypothetical:

> [A]ssume that we have a hypothetical claimant, aged 53, with a GED and the [Plaintiff's] past relevant work ... can lift and carry up to 20 pounds occasionally, 10 pounds frequently, and can perform eight hours of work with a sit/stand option. She can only occasionally climb stairs and ramps and never climb ropes, ladders, and scaffolds, and can occasionally crouch, kneel and crawl. Given these restrictions ... could this hypothetical claimant perform any [of the Plaintiff's] past relevant work?

(Tr. 172.)

The VE testified that with these limitations, the Plaintiff could perform, among other things, her past work as a printer.

On July 8, 2003, Joel Dascal, M.D., a medical expert for North Carolina Disability Determination Services ("NCDDS"), completed a Physical Residual Functional Capacity

3

Assessment, noting that the Plaintiff could lift and carry 50 pounds frequently and 25 pounds occasionally, could sit, stand, and/or walk for about 6 hours in an eight-hour workday, and had no limitations in pushing or pulling; that the medical record did not support any nonexertional limitations; and that, accordingly, the Plaintiff could perform medium work. In reaching these conclusions, Dr. Dascal noted that the Plaintiff's medical chart showed that although Plaintiff complained of pain, there was no evidence of joint swelling or crepitus, and that Plaintiff denied experiencing numbness or tingling. On September 11, 2003, William Robie, M.D., also a NCDDS medical expert, reviewed and affirmed Dr. Dascal's initial findings.

The Plaintiff has not assigned error to the ALJ's recitation of the Plaintiff's medical records. Moreover, the Court has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The record shows Ms. Phifer experienced a flare-up of fibromyalgia in April 2003. She previously underwent cervical surgery after a motor vehicle accident....
>
> The clamant received treatment at Caromont Family Medicine for the period April through October 2003. In July, she stated the pain medication was helping control the pain. She was experiencing neck pain and migraines, and she stated this pain had decreased. (Exhibit 3F)
>
> John Lister, M.D., of Caromont Family Medicine, opined on October 27, 2003, that the claimant must change positions every 30 minutes, including laying down if needed for pain relief. He opined her activity level is very limited. (Exhibit 5E) It is noted the treatment records from Caromont indicate she was seen and examined by John Martin Bradshaw, a physician's assistant. The record shows Dr. Lister did not examine her at any time. Therefore, this opinion is given little weight in determining the claimant's limitations.[1]

---

[1] Although the ALJ made no mention of it, the undersigned notes that on the same form, which had been supplied by the Agency, Dr. Lister answered the question "is it your opinion that due to claimant's physical and/or mental condition, she is disabled to engage in gainful employment?," Dr. Lister answered "No." (Tr. 69.)

4

> She began treatment with Herman Gore, M.D. at the Carolina Spine, Pain and Rehabilitation Center in October 2003. Examination revealed tenderness over the periscapular muscle region but normal range of motion of the hips. Range of motion of the spine was normal. Muscle strength was generally 5/5. Dr. Gore diagnosed fibromyalgia with chronic myofascial pain syndrome.
>
> The claimant did not receive treatment from October 2003 until August 2004, when she returned to Dr. Gore for follow up. X-rays revealed minimal degenerative changes of the lumbar spine. Bilateral hip x-rays were negative. Ms. Phifer received three epidural steroid injections, with some pain relief. In September 2004, a home electrical stimulation unit was prescribed. The claimant stated she returned this in February 2005, as no improvement was noted.
>
> A lumbar MRI was performed in October 2004 and revealed mild spinal stenosis at L4-5 with congenitally short pedicles at that level, and mild disc bulging at L5-S1 without canal or foraminal stenosis. In February 2005, the claimant was placed on Methadone for pain relief. The most recent office note, dated September 2005, revealed continued pain complaints. She stated she had increased her exercising. There was pain on palpitation over the large muscle groups. There was no evidence of swelling or edema. She was diagnosed with lumbar radicular pain, fibromyalgia, and cervical and lumbar spondylosis. Dr. Gore suggested possible surgery, but the claimant alleged she could not undergo surgery due to a lack of finances. (Exhibits 4F and 5F).

(Tr. 14.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

## III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district

court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that

term of art is defined for Social Security purposes.[2] The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff suffered "degenerative disc disease and disorder of the muscles, ligaments and fascia," which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff had the residual functional capacity for a limited range of light work,[3] that is, "lift and carry 20 pounds occasionally and 10 pounds frequently, [to] sit, stand and/or walk in combination for eight hours with a sit/stand option, no more than occasional crouch[ing], kneel[ing], crawl[ing] or climb[ing] stairs or ramps, and never [to] climb ropes, ladders or scaffolds"; and that based on the testimony of the VE, the Plaintiff could perform her past relevant work as a printer and, therefore, was not disabled.

As noted above, on appeal, the Plaintiff contends that the ALJ committed reversible error in concluding that Plaintiff was able "to sit, stand, and/or walk in combination for eight hours with a

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[3]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

sit-stand option," rather than stating the maximum amount of time that the Plaintiff could perform each of those three functions in an eight-hour day, but does not otherwise contest the ALJ's determination of her residual functional capacity or ultimate conclusion that she was not disabled because she could perform her past relevant work as a printer. See Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief Supporting ..." (document #11). The undersigned finds, however, that the ALJ properly evaluated the Plaintiff's ability to sit, stand and walk during a workday and, moreover, that there is substantial evidence supporting the ALJ's ultimate determination that the Plaintiff was not disabled.

The Plaintiff cites no authority in support of her assignment of error other than a single Social Security regulation, SSR 96-9p, which requires the ALJ to state separately the amount of time a claimant can sit, stand and walk where the claimant cannot perform the full range of sedentary work.[4] Where a Plaintiff can perform a full range of sedentary or a higher level of work, however, SSR 96-8p requires the ALJ to describe only the aggregate amount of sitting, standing, and/or walking that a claimant can perform during an eight hour workday, which the ALJ clearly did in this case.

Moreover, the ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited her ability to work, specifically her abilities to sit, stand and walk. Agency medical experts determined that the Plaintiff had the residual functional capacity for medium work – that is, that she could lift and carry 25 pounds frequently and 50 pounds occasionally, could sit, stand, and/or walk for about 6 hours in an eight-hour workday, and had no limitations in pushing

---

[4]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. See 20 C.F.R. § 404.1567(a).

8

or pulling; and that she had no nonexertional limitations.

The ALJ found the Plaintiff not disabled, however, based on a residual functional capacity for light work, further modified to provide a sit/stand option, no more than occasional crouching, kneeling, crawling or climbing stairs or ramps, and no climbing ropes, ladders or scaffolds. In other words, the ALJ concluded that the Plaintiff had a <u>lower</u> residual functional capacity than reviewing experts concluded was supported by the objective medical record. Moreover, the ALJ found nonexertional impairments consistent with the Plaintiff's testimony concerning her difficulties sitting, standing kneeling, climbing, and crawling, and found that the Plaintiff could perform the exertional requirements of light work – lift 20 pounds occasionally and 10 pounds frequently – as the Plaintiff also testified.

The medical record provides substantial evidence supporting the ALJ's finding of nondisability. Indeed, no doctor has ever opined that the Plaintiff is disabled from working, and based on an examination performed by his physician's assistant, Dr. Lister opined that the Plaintiff was <u>not</u> disabled. Rather, the limited medical records supports the ALJ's essential conclusion that the Plaintiff suffered from – but was not disabled by – her "degenerative disc disease and disorder of the muscles, ligaments and fascia." Dr. Gore found in October 2003 that the Plaintiff had normal range of motion of the hips and spine, and her muscle strength was normal ("5/5") throughout her body. X-Rays and an MRI noted only "minimal" or "mild" abnormalities of the spine. At her last visit with Dr. Gore, the Plaintiff stated that she was exercising more, and examination revealed no evidence of swelling or edema.

The record is also clear that during the relatively brief 18-month period that the Plaintiff sought any medical treatment (April 2003 through February 2005) for alleged impairments, she went

9

10 months without seeking treatment, that is, from October 2003 until August 2004; that she received three epidural steroid injections with some pain relief; and that she declined Dr. Gore's suggestion that spinal surgery was a possibility. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965). See also SSR 96-7p ("[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"); and 20 C.F.R. § 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work"). Accordingly, the ALJ reasonably concluded that Plaintiff's failure to seek treatment regularly and to follow the recommendations of her treating physician undercut her testimony as to the severity of her symptoms.

The record is also clear that the Plaintiff engaged in significant daily life activities during the subject period, such as bathing and dressing herself, exercising, and going grocery shopping. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work," which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for evaluating a claimant's subjective complaints

of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's degenerative disc disease and disorder of the muscles, ligaments and fascia diabetes, and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of her pain, and the extent to which it affects her ability to work," and found Plaintiff's subjective description of her limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain

affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between the Plaintiff's claims of inability to work and her objective ability to carry on a moderate level of daily activities, as well as the above-recited evidence in the medical record.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). In short, where there was substantial evidence to support the ALJ's determination of the Plaintiff's ability to sit, stand and walk, and where the Plaintiff's otherwise uncontested residual functional capacity mandated a finding of not disabled, the ALJ's ultimate decision to deny the Plaintiff benefits was supported by substantial evidence.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #10) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #12) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed: January 19, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge